WO                IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

KENTON V. McCARTHY,                )
                                   )
            Plaintiff,             )
                                   )
    vs.                            )
                                   )
STIFEL, NICOLAUS & COMPANY         )
INCORPORATED,                      )
                                   )   No. 2:16-cv-0581-HRH
            Defendant.             )
_____)

O R D E R

Motion to Compel Arbitration

Defendant moves to compel arbitration.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Facts

Plaintiff is Kenton V. McCarthy. Defendant is Stifel, Nicolaus & Company, Incorporated.

Plaintiff began working for Stone & Youngberg (S&Y), "a regional, privately-held investment banking firm based in San Francisco, California, in or about 2002 as a Vice

---

[1]Docket No. 12.

[2]Docket No. 13.

President/Institutional Fixed-Income Broker."[3]  In 2011, defendant, "a national, publically traded brokerage firm, based in St. Louis Missouri, acquired S&Y."[4]  Defendant retained some S&Y employees, including plaintiff.[5]

On August 22, 2011, plaintiff "signed a Continuation Letter agreeing to continue [his] employment with S&Y during the acquisition and to continue [his] employment with Stifel according to the terms and conditions of th[e] letter once the acquisition was complete."[6]  The Continuation Letter provided that plaintiff would

> receive $87,500.00 in the form of a Demand Promissory Note.... The promissory note will be forgiven over four years in accordance with the terms set forth in the attached promissory note, which you will sign on the effective date of the acquisition of Stone & Youngberg LLC by Stifel, Nicolaus & Company, Incorporated.[7]

The Continuation Letter also provided that plaintiff would "receive $87,500.00 in the form of stock units under the Stifel Wealth Accumulative Plan....  These units will have a base

---

[3]Complaint at 1, ¶ 7, Docket No. 1.

[4]Id. at 2, ¶ 8.

[5]Id. at ¶¶ 9-10.

[6]Julie Flynn's Declaration in Support of Defendant's Motion to Compel Arbitration at 2, ¶ 7 and Exhibit 1 thereto, Exhibit A, Motion to Compel Arbitration, Docket No. 12.

[7]Continuation Letter at 1, ¶ B, Exhibit 1, Flynn's Declaration, Exhibit A, Motion to Compel Arbitration, Docket No. 12.

year of 2011, will cliff vest after completing the fourth year and will be distributed in January 2016."[8]  The Continuation Letter contained an arbitration clause that provided:

> This letter agreement shall be governed by and construed in accordance with the laws of the State of Missouri without giving effect to any choice of law or conflicts of law principles. Any controversy or dispute arising between you and the Firm regarding your employment or separation there from, including any and all statutory claims or claims at common law, shall be submitted for arbitration before the Financial Industry Regulatory Authority ('FINRA') or successor agency, as the Firm chooses, in accordance with the applicable provisions of the arbitration rules of such organizations.  A copy of the current rules is available at:
>
> www.finra.org/ArbitrationMediation/Rules/CodeofArbitrationProcedure
>
> You further acknowledge that you have freely and voluntarily agreed to arbitrate all of your claims as a freely negotiated term and condition of your employment with the Firm, and that you have read and reviewed the applicable arbitration rules.[9]

On September 29, 2011, plaintiff signed the promissory note.[10]  The promissory note also contained an arbitration clause, which provided:

> Employee agrees that any controversy or dispute arising under this Note, or out of Employee's employment by Stifel (including, but not limited to, claims arising under the Civil Rights Act

---

[8] Id. at ¶ C.

[9] Id. at 2, ¶ F.

[10] Exhibit 2, Flynn's Declaration, Exhibit A, Motion to Compel Arbitration, Docket No. 12.

of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, the Age Discrimination in Employment Act, the Family Medical Leave Act and analogous state statutes) shall be submitted for arbitration upon demand of either party in St. Louis County, Missouri, in accordance with the rules of FINRA Dispute Resolution or its successor. Employee agrees that arbitration shall be the exclusive remedy and that the results of such arbitration shall be final and binding upon him. Judgment upon any award rendered by an arbitration panel may be entered in any state or federal court of competent jurisdiction.[11]

Plaintiff alleges that while employed by defendant, he "suffered from medical impairments related to his heart, including Atrial Fibrillation ('A-Fib'), which substantially limits his ability to perform numerous life activities."[12] Plaintiff alleges that he requested reasonable accommodations,[13] but that defendant failed to provide the requested accommodations;[14] that defendant "failed to engage in the interactive process to discuss potential reasonable accommodations[,]"[15] that defendant put him on a performance improvement plan after he requested reasonable accommodations,[16] that defendant treated

---

[11] Id. at 3.

[12] Complaint at 2, ¶ 16, Docket No. 1.

[13] Id. at 2, ¶ 19; 3, ¶ 23 & 4, ¶ 38.

[14] Id. at 2, ¶ 20; 3, ¶ 25 & 4, ¶ 39.

[15] Id. at 3, ¶ 21; see also 3, ¶ 25 & 4, ¶ 39.

[16] Id. at 4, ¶ 40.

him differently than similarly situated non-disabled employees,[17] and that defendant ultimately terminated him because of his disability.[18] Based on these allegations, plaintiff asserts three claims under the Americans with Disabilities Act: 1) a failure to accommodate claim, 2) a discrimination claim, and 3) a retaliation claim.

Defendant now moves to compel plaintiff to arbitrate his claims.

## Discussion

"With limited exceptions, the Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts involving interstate commerce." Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1126 (9th Cir. 2013). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Accordingly, while the Supreme Court has emphasized that the FAA clearly enunciates a congressional intention to favor arbitration, general contract defenses such as ... unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements[.]" Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc., 560 F.3d 935, 940 (9th Cir. 2009) (internal citations omitted). "In determining whether an arbitration clause is unenforceable, a federal court sitting in diversity must apply the

---

[17]Id. at 6, ¶ 52.

[18]Id. at 5, ¶ 42.

relevant state law." Id. "If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." Id.

"'A motion to compel arbitration is decided according to the standard used by district courts in resolving summary judgment motions pursuant to Rule 56, Fed. R. Civ. P.'" Longnecker v. American Exp. Co., 23 F. Supp. 3d 1099, 1105 (D. Ariz. 2014) (quoting Coup v. Scottsdale Plaza Resort, LLC, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011)). "Where, as here, a party attempts to litigate claims covered by a commercial contract containing an arbitration agreement subject to the FAA, the court must determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" Lowden v. T-Mobile USA, Inc., 512 F.3d 1213, 1217 (9th Cir. 2008) (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). Here, there is no dispute that the two arbitration agreements cover plaintiff's ADA claims. Rather, the dispute focuses on whether the arbitration agreements are valid and enforceable.

Plaintiff argues that the arbitration agreements are unenforceable because they are unconscionable. See A.R.S. § 47-2302(A) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract"). "Because [p]laintiff [is an] Arizona resident[], w[as]

employed in Arizona, and the parties do not dispute that Arizona law applies,[19] Arizona law determines whether the subject arbitration agreement[s are] valid" and enforceable. Coup 823 F. Supp. 2d at 941.

"Arizona courts have held that unconscionability can be either procedural or substantive." Batory v. Sears, Roebuck and Co., 456 F. Supp. 2d 1137, 1139 (D. Ariz. 2006). "Either doctrine can provide an independent defense to enforceability." Duenas v. Life Care Centers of Amer., Inc., 336 P.3d 763, 768 (Ariz. Ct. App. 2014). A plaintiff has "'a high bar to meet in demonstrating that an arbitration agreement is unconscionable.'" Longnecker, 23 F. Supp. 3d at 1108 (quoting Coup, 823 F. Supp. 2d at 947).

"'Procedural unconscionability addresses the fairness of the bargaining process, which is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should.'" Duenas, 336 P.3d at 768 (quoting Clark v. Renaissance West, L.L.C., 307 P.3d 77, 79 (Ariz. Ct. App. 2013)). Plaintiff argues that the arbitration agreements are procedurally unconscionable because they were provided to him on a "take-it-or-leave" basis. Plaintiff avers that he "did not negotiate the terms" of the arbitration agreements and that agreeing

---

[19]The Continuation Letter provides that Missouri law governs that agreement, but defendant contends, and plaintiff does not dispute, that there is no difference between the relevant Missouri and Arizona law.

to the terms of the agreements "was a condition of [his] employment with Stifel."[20] Plaintiff cites to two California cases in support of his argument.[21] In Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 923 (9th Cir. 2013), the court found an arbitration agreement procedurally unconscionable under California law, in part, because it had been offered on a "take-it-or-leave" basis, such that "Chavarria could only agree to be bound by the policy or seek work elsewhere." Similarly, in Ferguson v. Countrywide Credit Industries, Inc., 298 F.3d 778, 784 (9th Cir. 2002), the court found an arbitration agreement unconscionable under California law, in part, because "the arbitration agreement was imposed as a condition of employment and was non-negotiable."

Plaintiff is basically arguing that the arbitration agreements were contracts of adhesion, but "'[t]here is [no] Arizona law supporting the assertion that a finding of adhesion equates to a finding of procedural unconscionability.'" Longnecker, 23 F. Supp. 3d at 1109 (quoting R & L Ltd. Investments, Inc. v. Cabot Inv. Properties, LLC, 729 F. Supp. 2d 1110, 1115 (D. Ariz. 2010)). Under Arizona law, "[c]ontracts of adhesion are not per se unenforceable." Id. "A contract of adhesion is only unenforceable if it does not fall within the reasonable expectations of the weaker party and if the contract is unconscionable." Id.

---

[20]Declaration of Kenton V. McCarthy at 1, ¶¶ 10-11, Exhibit 1, Plaintiff's Response to Defendant's Motion to Compel Arbitration, Docket No. 13.

[21]Plaintiff cites to California law throughout his opposition because he contends that A.R.S. § 47-2302 is identical to California Civil Code § 1670.5.

Because "[p]laintiff advances no reasonable expectations arguments, the [substantive] unconscionability analysis below would ... be the dispositive inquiry." Jones v. General Motors Corp., 640 F. Supp. 2d 1124, 1130 (D. Ariz. 2009).

But if the court were to do a reasonable expectations analysis, the court would conclude that the arbitration agreements fall within the reasonable expectations of plaintiff. In a reasonable expectations analysis "in the employment context, a court must ... consider whether the employer had 'reason to believe that [plaintiff] would not have accepted the agreement if [he] had known that the agreement contained the particular [arbitration] term.'" Coup, 823 F. Supp. 2d at 945 (quoting Harrington v. Pulte Home Corp., 119 P.3d 1044, 1050 (Az. Ct. App. 2005)).

> A reason to believe:
>
> may be (1) shown "by the prior negotiations," (2) "inferred from the circumstances," (3) "inferred from the fact that the term is bizarre or oppressive," (4) proved because the term "eviscerates the non-standard terms explicitly agreed to," or (5) provided if the term "eliminates the dominant purpose of the transaction."

Id. (quoting Harrington, 119 P.3d at 1050). "Additionally, the doctrine of reasonable expectations '(6) requires drafting of provisions which can be understood if the [employee] does attempt to check on his rights' and consideration of '(7) any other facts relevant to the issue of what [the party] reasonably expected in this contract.'" Id. (quoting Harrington, 119 P.3d at 1051).

First of all, plaintiff surely knew that the Continuation Letter and the promissory note contained arbitration clauses. This is not a case of an unwary consumer signing a standard agreement in which an arbitration clause is buried somewhere in pages and pages of fine print. Rather, in this case, plaintiff, who had been employed in the financial services industry for nearly a decade, was signing documents that provided him with a substantial benefit, in the form of $87,500 in loan forgiveness and $87,500 in stock options. The documents in question were relatively short (the Continuation Letter was 2 pages and the promissory note was 4 pages) and the arbitration clause in each agreement was prominently displayed. In light of these facts, it would not be reasonable to infer that plaintiff did not know that the agreements contained arbitration clauses.

But even if plaintiff did not know that the agreements contained arbitration clauses, there is no evidence to support a conclusion that defendant had reason to believe that plaintiff would not have signed the Continuation Letter and the promissory note if he had known about the arbitration clauses. There is no evidence of any prior negotiations between plaintiff and defendant, the arbitration terms are not bizarre or oppressive, the arbitration clauses did not eviscerate any non-standard terms, and the arbitration clauses did not eliminate the dominant purpose of the transaction, which was to provide plaintiff with $87,500 in loan forgiveness and $87,500 in stock units for becoming a Stifel employee.

Thus, even if the arbitration agreements were contracts of adhesion, they are not procedurally unconscionable.

But even if the arbitration agreements are not procedurally unconscionable, which they are not, plaintiff argues that they still cannot be enforced because they are substantively unconscionable. "Substantive unconscionability addresses 'the actual terms of the contract and ... the relative fairness of the obligations assumed.'" Duenas, 336 P.3d at 769 (quoting Maxwell v. Fidelity Financial Srvcs., Inc., 907 P.2d 51, 58 (Ariz. 1995)). "Relevant factors include whether the contract terms are so one-sided as to oppress or unfairly surprise an innocent party, whether there is an overall imbalance in the obligations and rights imposed, and whether there is a significant cost-price disparity." Id.

Plaintiff first argues that the arbitration agreements are substantively unconscionable because they do not allow for adequate discovery. Plaintiff relies on authority from California in support of this argument. California courts have held that an arbitration agreement is substantively unconscionable if it does not allow for adequate discovery, particularly in cases involving statutory claims. For example, in Fitz v. NCR Corp., 118 Cal. App. 4th 702, 709 (Cal. Ct. App. 2004), the plaintiff asserted a Fair Employment and Housing Act age discrimination claim along with common law claims. The arbitration agreement in question "limit[ed] discovery to the sworn deposition statements of two individuals and any expert witnesses expected to testify at the arbitration hearing." Id. at

716. "No other discovery [was] allowed unless the arbitrator f[ound] a compelling need to allow it. The [agreement] require[d] the arbitrator to limit discovery as specified in the agreement unless the parties c[ould] demonstrate that a fair hearing would be impossible without additional discovery." Id. The court held that these limitations "fail[ed] to ensure that Fitz is entitled to discovery sufficient to adequately arbitrate her claims." Id. at 719.

Arizona courts, however, have rejected the argument that arbitration agreements that limit discovery are substantively unconscionable. For example, in Wernett v. Service Phoenix, LLC, Case No. CIV 09–168–TUC–CKJ, 2009 WL 1955612, at *6 (D. Ariz. July 6, 2009), the plaintiff argued that "the failure of the [Arbitration] Agreement to incorporate the relevant rules of civil procedure, the Agreement's limitation of depositions, and the Agreement's requirement of subpoenas to obtain documents and depose a representative of Service exhibits the unconscionability of the Agreement." The court rejected this argument based on Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991), in which the Court found that

> "there ha[d] been no showing ... that the ... discovery provisions, which allow for document production, information requests, depositions, and subpoenas, will prove insufficient to allow [plaintiff] ... a fair opportunity to present [her] claims. Although those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."

Id. (quoting Gilmer, 500 U.S. at 31). Similarly, the Wernett court found that "[a]lthough discovery is limited pursuant to the terms of the Agreement, it is not precluded. Indeed, although the parties are limited in the number of depositions, they are not limited in the number of interviews they are permitted. This provision is cost-saving to all parties and the [c]ourt finds this term is not unconscionable." Id. at *7.

Here too, plaintiff has failed to make a showing that the discovery permitted under the FINRA rules would be inadequate. As for depositions, FINRA Rule 13510 provides that "[d]epositions are strongly discouraged in arbitration. Upon motion of a party, the panel may permit depositions, but only under very limited circumstances[.]"[22] Plaintiff argues that this limitation on depositions is even more restrictive than that in Fitz, where the plaintiff was allowed to take two fact witness depositions as well as depositions of experts. But here, under the FINRA rules, plaintiff can only take depositions if the arbitration panel allows him to do so, which plaintiff suggests is unlikely.

However, one of the limited circumstances listed in FINRA Rule 13510 is "in cases involving claims of statutory employment discrimination, if necessary and consistent with the expedited nature of arbitration[.]"[23] This indicates that it is much more likely that plaintiff would be permitted to take depositions, if he so requested, than he contends.

---

[22]A copy of FINRA Rule 13510 is attached as Exhibit 2 to Plaintiff's Response to Defendant's Motion to Compel Arbitration, Docket No. 13.

[23]Id.

Plaintiff also argues that the written discovery provided for under the FINRA rules is inadequate. FINRA Rule 13506 provides:

> Parties may request documents or information from any party by serving a written request directly on the party. Requests for information are generally limited to identification of individuals, entities, and time periods related to the dispute; such requests should be reasonable in number and not require narrative answers or fact finding. Standard interrogatories are generally not permitted in arbitration.[24]

Plaintiff contends that this limited ability to obtain written discovery will not allow him to adequately litigate his claims. Plaintiff avers that he does not know which individuals were involved or who made the final decision to 1) not provide him with reasonable accommodations, 2) not engage in the interactive process, 3) take away many of his long-time, revenue producing clients, 4) take him off potential matters in which he had had substantial communications with prospective clients, 5) deny his request to lead sales efforts in the college and university market, 6) pull him off several large California accounts, 7) put him on a performance improvement plan, 8) terminate his employment, and 9) state on an internal form that he was discharged for failure to meet performance expectations.[25] Plaintiff suggests that he will not be able to obtain this information under the FINRA rules.

---

[24]A copy of FINRA Rule 13506 is attached as Exhibit 3 to Plaintiff's Response to Defendant's Motion to Compel Arbitration, Docket No. 13.

[25]McCarthy Declaration at 1-2, ¶¶ 12-19 & 21, Exhibit 1, Plaintiff's Response to Defendant's Motion to Compel Arbitration, Docket No. 13.

Plaintiff has averred that he does not know the identity of the persons involved in certain decisions. FINRA Rule 13506 plainly states that requests for information can ask for the identity of individuals. There is no reason why, under the FINRA rules, plaintiff could not get the information he avers he needs.

Plaintiff also avers that he has reason to believe that there were 23 other employees who had performance metrics lower than his but that these employees were not terminated.[26] Plaintiff argues that because of the limited scope of discovery allowed under FINRA Rule 13506, he will not be able to obtain the information that he needs to show that these employees were similarly situated and that he was treated differently from them.

But, FINRA Rule 13506 allows plaintiff to request documents that "relate to the matter in controversy."[27] There is no reason why, under the FINRA rules, plaintiff could not obtain documents and information about the 23 other employees.

Plaintiff also avers that he "complied with all of Stifel's policies and procedures regarding refraining from storing corporate documentation/information on anything other than corporate hardware and refraining from taking corporate documentation/information out of [his] office."[28] Plaintiff thus argues that he has even less documentation/information

---

[26]Id. at 2, ¶ 20.

[27]Exhibit 3, Plaintiff's Response to Defendant's Motion to Compel, Docket No. 13.

[28]McCarthy Declaration at 3, ¶ 25, Exhibit 1, Plaintiff's Response to Defendant's (continued...)

in his possession than a typical former employee and the limitations on discovery will prevent him from adequately pursuing his claims. But, as discussed above, under FINRA Rule 13506, plaintiff can obtain documents and other information related to the matters in controversy. The fact that he has complied with defendant's policies and procedures regarding corporate documents and information does not mean that he will lack sufficient opportunity to present his claims during arbitration. Plaintiff also makes reference to the Initial Discovery Protocols for employment cases alleging adverse actions that courts in this district use.[29] The Protocols call for the early production of discovery in employment discrimination cases. The discovery that must be produced under the Protocols is "[t]he information and documents identified as those most likely to be requested automatically by experienced counsel" in adverse employment actions.[30] These documents and information differ from "initial disclosures pursuant to F.R.C.P. 26(a)(2) because they focus on the type of information most likely to be used in narrowing issues for employment discrimination cases."[31] The Protocols require the defendant to produce, among other

---

[28](...continued)
Motion to Compel, Docket No. 13.

[29]A copy of the Standing Order for Certain Employment Cases is attached as Exhibit 4 to Plaintiff's Response to Defendant's Motion to Compel Arbitration, Docket No. 13.

[30]Id. at 4.

[31]Id.

things, documents containing communications concerning the factual allegations of the plaintiff's complaint, documents concerning the formation and termination of the employment relationship, and documents relied on to make the employment decisions at issue.³² The defendant must also identify the persons involved in any of the adverse employment actions and any other persons believed to have "knowledge of the facts concerning the claims or defenses at issue" and provide "a brief description of that knowledge."³³ Plaintiff argues that he will not have access to any of this information if he has to arbitrate his claims.

The FINRA rules allow plaintiff to obtain all the documents and information that he would receive under the Initial Discovery Protocols. The discovery that plaintiff may take under the FINRA rules is adequate. Plaintiff will not be deprived of a fair opportunity to present his claims during arbitration.

Second, plaintiff argues that the arbitration agreements are substantively unconscionable because they require him to incur costs that he would not incur if he litigates his claims in court. Plaintiff cites to <u>Armendariz v. Foundation Health Psychcare Services, Inc.</u>, 6 P.3d 669 (Cal. 2000), in support of this argument. There, the court

> conclude[d] that when an employer imposes mandatory arbitration as a condition of employment, the arbitration

---

³²<u>Id.</u> at 6-8.

³³<u>Id.</u> at 8.

>agreement or arbitration process cannot generally require the employee to bear any <u>type</u> of expense that the employee would not be required to bear if he or she were free to bring the action in court.

<u>Id.</u> at 687.

Under FINRA Rule 13802(d)(2), plaintiff <u>may</u> be assessed any of the following: 1) costs for recording a prehearing conference, 2) subpoena costs, 3) reasonable costs of appearances of witnesses and production of documents without subpoenas, 4) costs associated with an "explained decision", 5) fees imposed for requesting a postponement of a hearing, and 6) costs of obtaining a transcription and/or stenographic record of a hearing.[34] Plaintiff argues that with the exception of the costs associated with taking a deposition, the foregoing costs and fees are not costs that he would have to bear if he litigates this matter in court.

Under Arizona law, "'[a]n arbitration agreement may be substantively unconscionable if the fees and costs to arbitrate are so excessive as to 'deny a potential litigant the opportunity to vindicate his or her rights.'" <u>Duenas</u>, 336 P.2d at 769 (quoting <u>Clark</u>, 307 P.3d at 79). "To show this type of unconscionability, the party challenging the arbitration agreement must present specific, non-speculative evidence regarding several factors." <u>Id.</u> "First, the party must present reasonably certain evidence regarding the probable costs of

---

[34]Copies of the relevant FINRA Rules are attached as Exhibits 5-11 to Plaintiff's Response to Defendant's Motion to Compel Arbitration, Docket No. 13.

arbitration; second, []he must present individualized evidence regarding h[is] inability to pay those costs." Id. at 769-70. "The court also must consider whether the arbitration agreement or relevant arbitration rules allow for waiver or reduction of costs based on financial hardship." Id. at 770.

All plaintiff has presented here is speculation. He has submitted no specific facts to establish actual costs or his inability to pay such costs. Moreover, some of the fees that plaintiff contends he may incur in arbitration are also fees that he might incur if he were to litigate his claims in court. Besides deposition costs, plaintiff may also have to pay subpoena costs and transcription costs. Because plaintiff has not shown that the costs of arbitrating his claims are excessive, this is not a ground for finding the arbitration clauses substantively unconscionable.

## Conclusion

Because the arbitration agreements are not procedurally or substantively unconscionable, defendant's motion to compel arbitration[35] is granted. The clerk of court shall enter judgment dismissing plaintiff's complaint without prejudice.

DATED at Anchorage, Alaska, this 29th day of August, 2016.

/s/ H. Russel Holland
United States District Judge

---

[35]Docket No. 12.